[No. 5774.]

Saul v. Lapidus.

**1. Principal and Agent — Agent's Authority —** The manager of a retail store has no implied authority to purchase goods on the credit of his principal.—(543)

One who deals with an agent must inform himself of the extent of the agent's authority. A merchant selling goods to an agent, for the agent's own use, and charging them to the principal, the agent having no authority to make the purchase nor having been ever held out by the principal as possessed of such authority, the merchant must look to the agent.—(541)

**2. Appeals—Party Limited to the Contention Made Below—** Where, in the court below, plaintiff sought to charge defendant upon the ground of an express agency in another, he will not, upon appeal, be heard to urge liability upon the ground of a supposed benefit from the act, received by the principal.—(543)

**3. New Trial — Verdict Not Supported —** A verdict not supported by any evidence will be set aside.—(543)

*Appeal from Denver District Court*—Hon. Peter L. Palmer, Judge.

Mr. Benjamin F. Koperlick, and Messrs. Mc-Corkle & Teller, for appellant.

Mr. Ernest Morris, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The appellant, Marcus Saul, defendant below, is a manufacturer, in the city of New York, of clothing for men and women, and conducts a number of retail stores in different cities throughout the country, having one in Pueblo, Colorado.

This action was brought by appellee, Jacob L. Lapidus, plaintiff below, to recover of Marcus Saul $693.25, the price of certain clothing said to have been sold by the former to the latter on the 8th day of October, A. D. 1904, at Denver, Colorado.

At the time of the sale Jonas Saul was manager of Marcus Saul's Pueblo store. Early in October, 1904, Jonas Saul called on Lapidus, at the latter's place of business in Denver, and proposed to purchase a stock of goods, on his own account, to be shipped to Florence, Colorado, and to be charged to him, it being the purpose of Jonas, as then expressed to Lapidus, to start in business for himself at the latter place.

The goods were selected by, and a memorandum charge for them made against, Jonas Saul. Lapidus then asked for references, and told Jonas Saul he would let him know the following day whether he would extend the credit. It was at this time that Lapidus learned from Jonas that he was the manager of the Pueblo store of Marcus Saul, his brother.

Lapidus, not finding Jonas Saul rated, looked up Marcus Saul and found him good. Jonas Saul was thereupon notified that he could not have the goods on his own account, except by paying for them in cash, but that he might have them if charged and shipped to Marcus Saul. The goods were shipped to Marcus Saul at Florence and charged to him. Some of these goods were afterwards shipped back to Denver by Jonas Saul, but on refusal of Lapidus to

receive them, were shipped to Jonas Saul at Pueblo and were there sold on his own account. These goods not having been paid for, Lapidus brought suit against Marcus Saul for their price. On trial a verdict was returned against Marcus Saul for the full purchase price of the goods and interest. From a judgment entered upon this verdict Marcus prosecutes this appeal.

It being admitted that Jonas Saul made the purchase of the goods in question, the recovery of judgment by Lapidus against Marcus Saul can be supported only on one of the following theories: Either (1) that Jonas Saul was expressly authorized to buy the goods for Marcus; or (2) that the purchase was a necessary incident to the former's agency, as manager of the Pueblo store; or (3) that, to the knowledge of Lapidus, Jonas Saul had purchased goods on account of Marcus Saul, and Marcus had ratified such action by paying the bills; or (4) that Marcus Saul knowingly allowed Jonas to purchase for his own use, but upon his, Marcus Saul's, credit, whereby Lapidus was induced to part with his goods on the responsibility of Marcus.

Neither of these assumptions is supported by proof. The undisputed testimony is that Jonas Saul had no authority, as manager or otherwise, to buy goods even for the Pueblo store; nor was there any attempt to show that, having bought goods, his action had been ratified, by the payment of the bills for such purchases by Marcus Saul, or otherwise. Indeed the testimony fails to show that Jonas Saul ever bought a dollar's worth of goods for Marcus at any time or place. The testimony further shows, also undisputed, that Marcus Saul never had knowledge of the purchase in question, until payment was demanded, when he denied any connection with the transaction, and all liability thereunder.

Even if there was real or apparent authority in Jonas Saul to buy goods for the Pueblo store, by no stretch of the imagination can such authority be held to authorize a purchase of goods, on the credit of Marcus Saul, to be used to start a store at Florence for Jonas. Lapidus knew the precise situation better than any one; he knew Jonas Saul was not buying the goods for Marcus Saul; but on the contrary, that he was buying them for a store to be started by himself outside of Pueblo. Had he found Jonas responsible, no doubt the credit asked would have been given. When Lapidus found Jonas without rating, still anxious to sell the goods, he made the proposition to charge them to Marcus Saul, whom he had ascertained was good for the amount. With the facts before him, the plain legal duty was upon Lapidus to ascertain what authority, under the circumstances of the proposed sale, Jonas had to bind Marcus Saul for these goods. He should have made instant inquiry. This he utterly failed to do. It follows conclusively that if Lapidus finds himself now in an unfortunate plight, he is there through his own folly, and because of his failure to exercise ordinary business prudence and care to ascertain whether Jonas Saul had power to bind Marcus Saul, under the peculiar facts of this case, to pay the bill herein sued upon. Lapidus ought not to recover as a matter of common fairness, and certainly, under the law, he may not do so. On the pleadings and proof the court, of its own motion, should have instructed a verdict. It was error to deny the motion for a new trial, on the ground that the verdict is contrary to law and testimony.

In *Witcher v. Gibson,* 15 Col. App. 163, the court says that appellant's contention was that,

"Where one would hold the principal for the acts of an alleged agent, he must either show an express

authority delegated to the representative, or a course of conduct pursued along the lines of the due course of the particular business carried on to the knowledge and with the real or apparent consent of the principal which will estop him to deny an original grant of power. If this case is to be brought within the latter principle, he who thus deals with an agent is as much bound as in the first case to inquire about the agent's authority and if he thereby learns or by such investigation might have found out the actual limit of the agent's power, he may not insist that the authority was apparently possessed, and on that theory hold the principal for what the agent has done, when in fact he had no real right to act. I agree in the main with this law and concede that he whose cause of action grows out of an agent's acts, must either prove an actual power delegated, or one which may be legitimately inferred from what was done and that the plaintiff may not sit idly by, make no inquiry, and then hold the principal on the theory of an estoppel, without proof of a course of dealing with himself so long continued as to beget a legitimate reliance on the apparent possession of authority.''

Undoubtedly the above correctly states the law, and is peculiarly applicable here. The burden was with Lapidus to prove authority in Jonas Saul to bind his brother Marcus. No testimony to that effect was introduced. No course of dealing was shown, or attempted to be shown, which even squints at authority in Jonas to buy goods for Marcus, anywhere or for any store, or at all, much less to buy for himself, Jonas Saul. Lapidus made no inquiry as to the authority of Jonas. It is wholly due to this failure that he suffers. There is no law that puts this loss, which was the direct result of the inexcusable neglect

of Lapidus, on Marcus Saul, who is without fault himself, so far as the testimony shows.

There is no conflict in the testimony. The record is barren of proof, direct or inferential, to establish authority in Jonas, as agent, to bind Marcus in a transaction of this kind. The bald fact that Jonas was manager of the Pueblo store of Marcus Saul can in no sense be taken as proof of either real or apparent authority in the former to bind the latter for the purchase price of goods, with which to set himself up in business. This is the sole fact produced upon which reliance is had to show such authority. It is thus clear that the contention that the jury, on conflicting testimony, found such authority to exist, and that such finding binds this court, is without merit. There was not only no conflict in testimony, there was an entire absence of testimony even tending to establish such authority.

The witness Light testified that he saw later two or three of the childrens' sample overcoats with fur collars, sold in this bill of goods, at the Pueblo store of Marcus Saul. This is vigorously denied, and Light's identification is by no means conclusive, or even satisfactory, he having seen the goods only at a distance. Upon the strength of this testimony an affirmance of the judgment is urged, under the rule that the principal will not be permitted to keep the product of a purchase and refuse to pay, even though the agent was without authority to buy. Even if this principle of law could, at this late day and now for the first time, be invoked, the supposed benefit to Marcus Saul is of such doubtful import, and so trifling in amount, that it cannot be permitted to rule the case. However, the action is planted by the pleadings, proof and instructions of the court, alone upon the doctrine of agency. An inspection of the instructions shows this conclusively. No question of

benefits to Marcus Saul from the transaction was submitted to or passed upon by the jury, and we hold that, in any event, the showing in this respect was entirely insufficient to warrant the application of the rule.

The judgment is wrong as matter of law, and should be reversed, and the cause remanded with instructions to the court below to proceed therewith in aoccrdance with the views here expressed. It is so ordered.                                   *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.